First Division
February 26, 2007

No. 1-04-3731

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 00 CR 8962 |
| | ) | |
| JOHN NAYLOR, | ) | Honorable |
| | ) | John Kirby, |
| Defendant-Appellant. | ) | Judge Presiding |
| | ) | |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Following an August 2004 bench trial, defendant, John Naylor, was found guilty of four felony narcotics charges: possession of heroin with intent to deliver while on Chicago Housing Authority (CHA) property, delivery of heroin on CHA property, possession of heroin with intent to deliver and delivery of heroin. The trial court sentenced defendant to six years' imprisonment and imposed a total of $2,720 in fines, assessments, costs and fees.

Defendant appeals, arguing that: (1) the trial court improperly admitted his prior conviction for aggravated battery because the conviction was entered 14 years prior to trial; (2) three of defendant's convictions should be vacated because they are lesser included offenses of delivery of a controlled substance on CHA property; (3) defendant should be awarded $5-per-day presentence credit for the 101 days he was in custody prior to sentencing toward his $2,000 fine for possession of a controlled substance; and (4) the statute mandating that persons convicted of drug-related offenses be assessed a $5 fee for deposit into the Spinal Cord Injury Paralysis Cure Research Trust Fund (Spinal Cord Fund) violates defendant's due process rights because there is no rational relationship between the sale of a controlled substance and the public interest in the Spinal Cord

1-04-3731

Fund.

The following evidence was presented at defendant's August 2004 bench trial. The State proceeded at trial on four of the six counts from defendant's indictment: possession of a heroin with intent to deliver while on CHA property, delivery of heroin on CHA property, possession of heroin with intent to deliver, and delivery of heroin.

Officer John Lewis testified that he is a Chicago police officer assigned to the narcotics and gang investigation section.

On March 9, 2000, Officer Lewis was working in the vicinity of 4429 S. Federal in Chicago. 4429 S. Federal is part of the Robert Taylor Homes, which is property owned by CHA. On that date, Officer Lewis, in conjunction with other officers, was conducting an operation to suppress narcotics activity in Robert Taylor Homes. Officer Lewis's role was to make a controlled narcotics purchase.

Officer Lewis was in civilian dress. He entered the Robert Taylor Homes at about 10:20 a.m. He went to the north fourth-floor stairwell. He met an individual who asked Officer Lewis if he wanted "white," which Officer Lewis understood to mean heroin. Officer Lewis identified that individual as defendant. Officer Lewis responded to defendant that he wanted one foil packet. Officer Lewis paid with a $10 bill of prerecorded "1505 funds." The serial number from the bill was recorded prior to the purchase. Officer Lewis exchanged the $10 bill for one tinfoil packet containing a white powder he suspected was heroin. Officer Lewis then left the stairwell.

Officer Lewis saw defendant again 10 to 15 minutes later when defendant was being led out of the building by Officer William McKenna. Officer McKenna then returned the $10

2

prerecorded bill to Officer Lewis. He inventoried the $10 bill and the tinfoil packet.

On cross-examination, Officer Lewis stated that he made one purchase that day. Officers Boggan, Boyd and Espinosa were also present in the stairwell when Officer Lewis made his purchase. Defendant was standing with a couple of other individuals. Officer Boyd was standing behind Officer Lewis in line for a purchase. Officer Lewis said all four officers made purchases. Then, they all exited the building. Officer Lewis did not know from whom the other officers purchased. Each of the officers returned to his vehicle and radioed the physical and clothing descriptions of the individuals. Defendant was arrested along with a few other individuals. From inside his unmarked car, Officer Lewis saw defendant being brought out of the building . Officer Lewis admitted that he did not see Officer McKenna recover the $10 bill from defendant.

Detective Deon Boyd testified that he is currently a detective with Area 2 homicide in the Chicago police department, but in March 2000, he was a police officer assigned to the organized crime, narcotics, section.

On March 9, 2000, Detective Boyd was working in the vicinity of 4429 S. Federal in Chicago. He was working as an undercover officer at a CHA housing complex. He was working with Officer Opal Espinosa and also saw Officers Lewis and Boggan at that location. Once at that location, he was told by several people to go to the fourth-floor stairwell.

When he reached the fourth-floor stairwell, Detective Boyd saw a line of individuals making narcotics purchases. Officer Lewis was leaving the line when Detective Boyd reached the line. When Detective Boyd got to the front of the line, he came into contact with a man he identified as defendant. Detective Boyd asked defendant to get two packages of narcotics. He had

a $20 bill of "1505 prerecorded funds" with him for the purchase. The serial number of the $20 bill had been prerecorded. Detective Boyd tendered the $20 bill in exchange for two tinfoil packets. Detective Boyd opened the packets and saw a white powder substance that he suspected was heroin. Detective Boyd then exited the stairwell.

Detective Boyd and Officer Espinosa then returned to their undercover vehicle and informed the enforcement team of defendant's description. After the enforcement team arrived on the scene, they apprehended defendant and several other individuals. Detective Boyd saw defendant with Officer McKenna. Officer McKenna later returned the $20 bill of prerecorded funds to Detective Boyd. He inventoried the tinfoil packets and the $20 bill.

On cross-examination, Detective Boyd said he thought three or four people were arrested that day. He knew one individual that was arrested was Kohler Parks, from whom he saw Officer Espinosa buy drugs. He did not see from whom Officers Lewis or Boggan purchased drugs.

The State offered a stipulation that, if called to testify, Timothy Tripp, a forensic chemist with the Illinois State Police crime cab, would state that he tested the powder from each of the tinfoil packets submitted by Officer Lewis and Detective Boyd. He would testify that the substance in the packet recovered from Officer Lewis tested positive for the presence of heroin and that one of the packets submitted by Detective Boyd tested positive for heroin. The defense did not object to this stipulation.

The State rested after the stipulation was entered. Defendant then moved for a directed finding, which the trial court denied.

Defendant testified on his own behalf. He said that on March 9, 2000, he was living in

apartment 902 at 4429 S. Federal. He said he was arrested that day by the Chicago police department. He denied being in possession of money from drug sales. Defendant said that all he remembered was being arrested with a lot of people and placed in a "paddy wagon." He denied selling drugs that day.

Defendant said he was coming down the stairs from his apartment when he was jumped and sprayed in his face with mace. He remembers asking for a paramedic because his eyes were burning.

On cross-examination, defendant said he did not remember which floor he was on when the police sprayed him with mace. He repeated several times that all he remembered was getting sprayed. He said that when he left his apartment, he was going to pick up his son from kindergarten.

After defendant testified, the State offered a certified copy of defendant's 1990 conviction for aggravated battery as rebuttal evidence. Defendant's attorney objected to its admission based on the length of time since defendant's release as being more than 10 years. The trial court overruled defendant's objection and admitted the certified copy of the conviction.

The trial court found defendant guilty on all counts. At a November 2004 sentencing hearing, the trial court sentenced to six years' imprisonment based on "four counts of guilty." The trial court also imposed a total of $2,720 in fines, fees, assessments, and costs, including a $2,000 drug assessment and $5 fee for the Spinal Cord Fund.

This appeal followed.

Defendant first argues that the trial court improperly admitted his prior conviction for

aggravated battery because defendant's prior conviction occurred more than 10 years before his current trial. The State initially responds that defendant has waived this issue on appeal by failing to raise the issue in a posttrial motion. In the alternative, the State maintains that the trial court properly allowed the prior conviction as impeachment because defendant's sentence on that charge extended into the 10-year period between defendant's release from prison and defendant's arrest and trial.

Defendant concedes that he failed to raise this issue in his posttrial motion, but asks this court to review this issue as plain error. Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." People v. Hall, 194 Ill. 2d 305, 335 (2000).

Defendant asserts that the evidence was closely balanced in this case because the only evidence presented was the testimony of the officers and defendant. Defendant contends that the improperly admitted evidence of his prior conviction was highly prejudicial in the trial court's credibility determination. We agree with defendant that the evidence was closely balanced and that the admission of the evidence of his prior conviction for impeachment may have influenced the

trial court's credibility determination.

The Illinois Supreme Court in People v. Montgomery, 47 Ill. 2d 510, 516 (1971), delineated the admissibility of prior convictions for impeachment. For the purposes of attacking credibility, evidence of a prior conviction is admissible if: (1) the crime was punishable by death or imprisonment for more than one year, or the crime involved dishonesty or false statement regardless of the punishment; (2) less than 10 years have elapsed since either the conviction or the witness's release from confinement, whichever is later; and (3) the probative value of the conviction outweighs the danger of unfair prejudice. Montgomery, 47 Ill. 2d at 516.

Here, defendant's prior conviction for aggravated battery was entered on December 14, 1990, at which time defendant received a four-year sentence. Defendant's trial in the instant case took place in August 2004. At trial, the prosecutor pointed out that if defendant served the full four-year term, he would have been released within 10 years of trial. However, the trial court considered the operative end date as being the date of the new occurrence, March 9, 2000, and found the prior conviction to have taken place within 10 years from that date.

The event or point in time by which the 10-year period must run, meaning when is the end of the 10-year point, is not specifically defined and has been determined differently by different courts. Illinois courts have not treated the question the same. See, *e.g.*, People v. Reddick, 123 Ill. 2d 184, 203 (1988) (date of trial); People v. McKay, 279 Ill. App. 3d 195, 202 (1996) (date of new offense); People v. Truss, 254 Ill. App. 3d 767, 780-81 (1993) (date of trial); People v. Hawkins, 243 Ill. App. 2d 210, 223-24 (1993) (date of testimony); People v. Strange, 125 Ill. App. 3d 43, 45-46 (1984) (apparently date of trial); People v. Thibudeaux, 98 Ill. App. 3d 1105, 1113 (1981)

1-04-3731

(date of testimony). While many Illinois decisions have applied the <u>Montgomery</u> test to determine the admissibility of a prior conviction, none of these prior decisions have analyzed this precise issue. The only exception to this is the case of <u>People v. Owens</u>, 46 Ill. App. 3d 978 (1977), and in that case, the reviewing court relied on prior cases which used the date of trial without any discussion.

Nevertheless, it appears that the majority of Illinois cases have applied the <u>Montgomery</u> test using the date of trial. See <u>People v. Harvey</u>, 211 Ill. 2d 368, 383 (2004); and <u>People v. Cox</u>, 195 Ill. 2d 378, 383 (2001) (both stating the <u>Montgomery</u> test as when "the witness' conviction or release from confinement, whichever date is later, occurred less than 10 years from the *date of trial*" (emphasis added)). We do not believe that the choice of words in these recent supreme court decisions was accidental. Rather, the words indicate that the time frame for courts to look at is the date of trial. Further, in <u>Owens</u>, 46 Ill. App. 3d at 993, the reviewing court held that the operative date for admitting a prior conviction was the time of trial, and specifically found it was not the date the subsequent offense occurred.

We agree with the case law that applies the 10-year time period in <u>Montgomery</u> as running from the date of conviction or release from confinement, whichever is later, to the date of trial. We point out that in <u>Montgomery</u>, the supreme court, while not stating that it was measuring to the date of trial, did consistently refer to the prior conviction as being 21 years old, which was how old the conviction was at the date of trial (compared to 19 years old at the date of the new offense). See <u>Montgomery</u>, 47 Ill. 2d at 511-12. If the supreme court in <u>Montgomery</u> intended for the 10-year time frame to run from conviction or release until the date of the new occurrence, then the

8

court would not have specifically referred to the 21 years that had elapsed since that conviction and trial. We find that the <u>Montgomery</u> decision intended to use the date of trial as the end point in the 10-year time period and this finding is supported by the majority of Illinois decisions.

We acknowledge the decision by the Minnesota Supreme Court in <u>People v. Ihnot</u>, 575 N.W.2d 581, 585 (Minn. 1998), which held that the end point for the 10-year period is the date of the charged offense. We also point out that the findings of the courts of other states are not binding on this court. <u>People v. Sullivan</u>, 366 Ill. App. 3d 770, 781 (2006). Moreover, the Indiana Court of Appeals in a case of first impression considered the <u>Ihnot</u> decision and rejected its conclusion in <u>Whiteside v. State</u>, 853 N.E.2d 1021, 1027-28 (Ind. App. 2006). The reviewing court in <u>Whiteside</u> dismissed the notion that the date of trial would be subject to manipulation so it would prevent the opposing party from admitting the prior conviction. <u>Whiteside</u>, 853 N.E.2d at 1027. Further, the <u>Whiteside</u> court, in finding that the time of testimony is the proper date, stated that contrary to the decision in <u>Ihnot</u>, there are policy justifications involved because "[t]he moment that the jury learns that a witness was previously convicted is the first moment that the unfair prejudice, if any, has the potential to influence the jury." <u>Whiteside</u>, 853 N.E.2d at 1028.

We reject the conclusions in <u>Ihnot</u> and agree with <u>Whiteside</u> that the focal point in considering the operative end date for the 10-year period should be the prejudicial impact of the prior conviction on a witness's credibility, and by looking at the date of trial or the date of testimony, the focus is properly on that moment in time. The court in <u>Whiteside</u> held that the operative date was the date of testimony, but we find the difference between the date of testimony and the date of trial to be negligible. We will adhere to the date of trial as the operative date

9

because Illinois cases, without much discussion, have used this date most consistently when considering the admission of a prior conviction. See Harvey, 211 Ill. 2d at 383; Cox, 195 Ill. 2d at 383. Most often the date of trial and the date of testimony will be the same day or within the next few days, and therefore, the reasoning remains sound for either date. While it has been asserted that the date of trial could be manipulated by dilatory tactics, we do not see a reason to alter the pertinent time for impeachment on this basis.

Additionally, the Whiteside court noted that the trial court should also consider, among other things, the degree of remoteness in time when determining whether to admit a prior conviction. Whiteside, 853 N.E.2d at 1027. There, the reviewing court pointed out that the trial court must still consider the probative value in light of its prejudicial effect to determine admissibility. Whiteside, 853 N.E.2d at 1029. We also concur with this reasoning that the trial court still must weigh the probative value of a prior conviction against its prejudicial effect.

Therefore, the operative dates under Montgomery are the date of the prior conviction or release from confinement, whichever occurred later, and the date of trial. In the instant case, the State failed to present evidence of defendant's actual release date from confinement. "A court should not presume confinement or the date of a release from confinement. The party seeking to impeach testimony has the responsibility of presenting proper evidence of an impeaching conviction." People v. Yost, 78 Ill. 2d 292, 297 (1980); see also People v. Strange, 125 Ill. App. 3d 43, 46 (1984) ("The State, in seeking to impeach Strange, was obligated to present proper evidence of the previous conviction and release date"). Since the State did not present proof of defendant's release from confinement, we will use the date of conviction as the operative date to

1-04-3731

measure the 10-year period.

Defendant's prior conviction was entered on December 14, 1990, and the trial began on August 11, 2004. The date of trial was more than 13 years after defendant's date of conviction. Accordingly, defendant's prior conviction was improperly admitted at defendant's trial. We reverse defendant's conviction and remand for a new trial. We note that the State carries the burden of proving the beginning date of the 10-year period while the end point remains the date of the first trial. See People v. Reddick, 123 Ill. 2d 184, 203 (1988) (if the prior conviction was less than 10 years old at the initial trial but is now greater than 10 years at a retrial, "fundamental fairness" dictates that a witness may be impeached in the same manner as at the original trial).

Defendant also asserts on appeal that three of his four convictions must be vacated because they are lesser included offenses to defendant's conviction for delivery of a controlled substance on CHA property. The State concedes that the convictions for possession with intent to deliver and delivery are lesser included offenses, but does not agree that the conviction for possession with intent to deliver on CHA property is a lesser included offense of delivery on CHA property. Since we are reversing defendant's convictions and remanding for a new trial, we need not reach the merits of this issue. However, we point out that defendant's "one-act, one-crime" argument based on People v. King, 66 Ill. 2d 551 (1977), is incorrect because in this case the evidence presented at trial showed two sales to two different police officers, and Illinois case law holds that King is inapplicable and separate convictions are proper when there are multiple victims. See People v. Shum, 117 Ill. 2d 317, 363 (1987) ("separate victims require separate convictions and sentences"); see also People v. Lee, No. 1-04-2258, slip op. at 10 (April 27, 2006).

11

Next, defendant contends that he is entitled to apply his presentence credit toward the $2,000 drug assessment imposed by the trial court. The State maintains that defendant is not entitled to a credit because convicted offenders are only allowed the credit toward fines, not assessments.

Defendant asserts that under section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2002)), he is entitled to a credit of $505 for the $2,000 controlled substance assessment imposed under section 411.2(a)(2) of the Illinois Controlled Substances Act (720 ILCS 570/411.2(a)(2) (West 2002)). Section 110-14 provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2002).

The supreme court in People v. Jones, No. 101996 (December 21, 2006), recently rejected the State's position. In Jones, the supreme court agreed with the appellate court decision in People v. Fort, 362 Ill. App. 3d 1 (2005), and pointed out that a section 411.2 drug assessment has been consistently construed is a "fine," not a "fee," subject to offset by presentencing incarceration credit and that the legislature has never amended the statute to repudiate these holdings. Jones, slip op. at 18. Accordingly, we find that defendant is entitled to a $505 credit against the $2,000 controlled substance assessment for the 101 days he spent in custody prior to sentencing.

1-04-3731

Finally, defendant contends that section 5-9-1.1(c) of the Unified Code of Corrections (Code) (730 ILCS 5/5-9-1.1(c) (West 2002)), which requires drug-related offenders to pay $5 to the Spinal Cord Fund, violates his due process rights. The supreme court in <u>Jones</u> also considered this issue and found the $5 charge to be "in the nature of [a] fine" and held that a specific purpose for the proceeds of a fine are irrelevant to its constitutionality. <u>Jones</u>, slip op. at 28-29. Therefore, due process requires only that the punishment imposed be rationally related to the offense, and that test is satisfied with the $5 charge to the Spinal Cord Fund. <u>Jones</u>, slip op. at 29. Therefore, the trial court properly assessed the $5 charge to defendant.

Based on the foregoing analysis, we reverse defendant's conviction and remand for a new trial consistent with this opinion.

Reversed and remanded.

GARCIA and R. GORDON, JJ., concur.