**Theodozia S. PEPE, Executrix of the Estate of Michael J. Pepe, Jr., Deceased, et al., Plaintiffs,**

v.

**John JAYNE, M.D., et al., Defendants.**

Civ. No. 86–2279(SSB).

United States District Court,
D. New Jersey.

March 28, 1991.

Raymond J. Quaglia, Joseph A. Ruggieri, Camden, N.J., for plaintiffs.

Parker, McCay & Criscuolo, P.A. by Thomas D. Romando, Marlton, N.J., for defendant John Jayne, M.D.

Grossman & Kruttschnitt, P.C. by David P. Corrigan, Toms River, N.J., for defendant Paul Kirschenfeld, M.D.

Martin, Gunn & Martin, P.C. by Burchard V. Martin, Westmont, N.J., for defendant William Jay Portner, M.D.

Montano, Summers, Mullen, Manuel, Owens & Gregorio, P.C., Cherry Hill, N.J., for defendant Rayman Wilensky, M.D.

## OPINION

BROTMAN, District Judge.

Before the court is plaintiffs' motion for a new trial pursuant to Fed.R.Civ.P. 59.

## I. FACTS AND PROCEDURE

Michael J. Pepe, Jr. was admitted to Shore Memorial Hospital, Somers Point, New Jersey on July 4, 1989, after he sustained injuries in a crash of an ultralight plane. He was admitted to the hospital through the emergency room. As a result of the accident, the decedent suffered trauma to the back and ankle, and a fracture to the first lumbar vertebrae. Due to potential neurological consequences, the emergency room placed the patient on the services of the neurosurgical group of Strenger, Greenwood and Dellasota. Dr. Lawrence Strenger, a neurosurgeon, examined the patient and requested a consultation by Dr. Rayman Wilensky.

Dr. Wilensky examined the patient on July 6, 1984, and saw him daily until July 16, 1984. The patient seemed to progress satisfactorily until the afternoon of July 16, 1984. At that time, certain chest complaints and symptoms developed. Dr. Strenger and Dr. Wilensky discussed the case at about 5:00 that day, and decided to obtain a pulmonary consultation. Dr. Paul Kirschenfeld performed the consultation that evening. Dr. Kirschenfeld and Dr. Wilensky discussed the status of the patient and the possibility of a pulmonary embolus. Due to the patient's other injuries, the physicians decided to withhold the use of heparin until the pulmonary embolus could be confirmed. Dr. Kirschenfeld ordered certain tests for the morning of July 17, 1984. At approximately 1:00 a.m. that morning, the patient was seen by a house physician because of severe left chest pain. That physician made a diagnosis of probable pulmonary embolus.

At 9:00 a.m., Dr. John Jayne, the partner of Dr. Kirschenfeld, came to the hospital to check on the patient. At that time, the patient was in the x-ray department. Dr. Jayne went there, and waited for the patient to complete a lung scan. Orders were written for a venography. Dr. Jayne followed the patient back to the floor. Dr. Jayne then ordered heparin for the patient, but directed that it be withheld pending the completion of a venogram. An attempt to perform venography on that day was unsuccessful. Heparinization was instituted in the afternoon. Dr. Jayne saw the patient several times that day, the last time being late afternoon or early evening.

The next morning, July 18, 1984, Dr. Jayne again saw the patient in the x-ray department where the second attempt at venography was being performed by Dr. William Jay Portner who is a specialist in intervention venography. During the procedure, the patient became short of breath. Dr. Portner determined that the patient had just thrown his second large pulmonary embolus, and that aggressive procedure should be instituted. A surgeon was notified, but was tied up in surgery. A pulmonary arterial catheter was placed in the patient for the infusion of streptokinase. The patient was taken to the intensive care unit where he became non-responsive and went into respiratory failure. Attempts at resuscitation failed and the patient died.

Plaintiffs, the estate of decedent and his family, instituted this lawsuit in 1986 alleging that decedent's death was caused by medical malpractice. Plaintiffs named the

Estate of Dr. Strenger, Dr. Wilensky, Dr. Jayne, Dr. Kirschenfeld, Dr. Portner and Shore Memorial Hospital, among others, as defendants in this action. On June 5, 1987, the court entered summary judgment in favor of defendants Dr. Ernest Dunn and Dr. Melvin Markowitz. On February 3, 1988, the court entered summary judgment in favor of defendant Shore Memorial Hospital. Plaintiffs stipulated to the dismissal of certain defendants, with claims against defendants Strenger, Jayne, Kirschenfeld, Portner and Wilensky remaining at the time of trial. The jury trial in this case commenced on August 14, 1989, and continued until August 25, 1989.

At trial, several experts, including the defendants themselves, testified for the various parties. Plaintiffs' expert, Dr. Theodore Rodman, testified that the medical care rendered was substandard in that decedent's physicians failed to recognize the tell-tale symptoms of a probable pulmonary embolism at a sufficiently early stage in Mr. Pepe's hospitalization. Plaintiffs contend that early treatment would have prevented the second, massive pulmonary embolism which proved to be fatal. In addition, Dr. Rodman testified that the physicians acted improperly by interrupting the heparin treatment once it was commenced, and by using an ineffectual dosage of streptokinase to dissolve the second pulmonary embolism when Mr. Pepe was in extreme distress just prior to his death.

Dr. Engelman, Dr. Kirschenfeld's expert witness, testified that there were contraindications of heparin treatment, and that defendants' decision to delay that treatment was a reasonable medical decision. Defendants themselves testified as to the propriety of delaying the heparin treatment. Other than Dr. Engelman, no other defense expert witness was called to testify concerning the timing of the heparin treatment.

On August 25, 1989, the court granted the unopposed motion of the Estate of Dr. Strenger for a directed verdict. On August 25, 1989, the jury rendered its verdict through answers to special interrogatories. The jury found that the remaining defendants, Doctors Jayne, Kirschenfeld, Portner and Wilensky, were not negligent in their treatment of decedent. As a result, the court entered a judgment of no cause for action against the remaining defendants.

Plaintiffs now move for a new trial, arguing that the court committed several errors during the trial. First, plaintiffs contend that the court erroneously granted defendant Kirschenfeld's motion *in limine* to prohibit any reference to Dr. Karl Engelman's eleven year old conviction for filing false and fraudulent records with Internal Revenue Service. Dr. Engelman, a specialist in internal medicine, testified via videotaped deposition as defendant Kirschenfeld's expert at trial. Plaintiffs contend that such conviction was automatically admissible under Fed.R.Evid. 609 as Dr. Engelman's medical report in this case was disseminated less than ten years after his conviction, and his trial testimony related only to his report. Even if the trial court properly found that Dr. Engelman's conviction was over ten years old, plaintiffs claim the court improperly weighed the probative value versus the prejudicial effect of that conviction when it found Dr. Engelman's conviction was inadmissible. Plaintiffs posit that the court's exclusion of Dr. Engelman's conviction was prejudicial to plaintiffs as Dr. Engelman's credibility was essential in this case as Dr. Engelman was the only non-party witness to testify that it was a reasonable medical decision for the defendant doctors to delay the heparin treatment. His testimony directly contradicted that of plaintiffs' expert, Dr. Rodman. Plaintiffs contend that such preclusion was also prejudicial as it made plaintiffs' videotaped cross-examination of Dr. Engelman appear pointless and harsh. At the March 27, 1991 oral argument, plaintiffs' counsel identified the exclusion of testimony concerning Dr. Engelman's conviction as the single most important reason to grant plaintiffs' motion for a new trial.

Second, plaintiffs argue that the court erroneously charged the jury that a "physician cannot be held liable if in the exercise of judgment, he has nevertheless made a mistake" and that such error was com-

pounded by submitting the written jury instruction to the jury. Plaintiffs urge the court to find that the instruction was misleading and prejudicial, and that it was erroneous to submit the written charge to the jury.

Third, plaintiffs claim that the court committed error by failing to allow the plaintiffs' expert, Dr. Steven Zelikoff, to testify as to the aggregate amount of damages sustained by plaintiffs. Plaintiffs contend that the error was prejudicial as it created the impression to the jury that plaintiffs' expert was ineffectual and cast dispersions on other parts of the plaintiffs' case. Plaintiffs also assert that the court's charge on damages was too lengthy and erroneous, causing them prejudice. They contend that the jury may have found the doctors were not negligent in order to avoid consideration of the lengthy instructions on damages.

Defendants urge the court to deny the motion for a new trial, contending that the court committed no prejudicial error and that the verdict was supported by substantial evidence.

## II. DISCUSSION

Fed.R.Civ.P. 59 provides in relevant part:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States.

The court may, in its discretion, grant a motion for a new trial when the verdict is against the great weight of the evidence, when the court has committed any prejudicial error of law, or for any other equitable reason. C. Wright & A. Miller, *Federal Practice and Procedure* § 2805 at 37–38 (1973). The court must determine whether the circumstances of this case justify a new trial.

### A. *The Court's Preclusion of Reference to Dr. Engelman's Conviction*

Dr. Engelman testified as an expert on behalf of Dr. Kirschenfeld at trial. Prior to trial, defendant Kirschenfeld moved to preclude any reference to Dr. Engelman's misdemeanor convictions for filing false and fraudulent records with the Internal Revenue Service. The court granted the motion, and prohibited plaintiffs from making any reference to those convictions at trial.

The relevant rule governing the admissibility of Dr. Engelman's conviction is Fed. R.Evid. 609 [1] which provides:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime ... (2) involved dishonesty or false statement, regardless of the punishment.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction ... unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect....

Plaintiffs argue that they should not have been precluded from referring to Dr. Engelman's conviction in order to impeach his credibility under either of two theories. Plaintiffs contend that the date of Dr. Engelman's conviction should be measured from the date he filed his medical report in this case, in which case his conviction was automatically admissible under Fed.R.Evid. 609(a)(2) and 609(b) as he was convicted less than ten years prior to the time of his report for a crime involving dishonesty or false statement.[2] In the alternative, plaintiffs posit that the court abused its discretion in finding that the prejudicial effect of

---

**1.** Fed.R.Evid. 609 was amended in 1990. The court will refer to the version of Rule 609 in effect at the time this case was tried in 1989.

**2.** There is no dispute that filing false and fraudulent records with the Internal Revenue Service is a crime involving "dishonesty or false statement" under Fed.R.Evid. 609(a)(2).

Dr. Engelman's convictions outweighed its probative value.

Defendants contend that evidence of Dr. Engelman's conviction was properly excluded. At the time of trial, they argued that evidence of his conviction, if admitted, would prejudice *all* of the defendant doctors, not only Dr. Kirschenfeld for whom Dr. Engelman appeared as a witness, as all defendant doctors' testimony would comport with Dr. Engelman's testimony. Admission of Dr. Engelman's conviction would be prejudicial to all of the defendants as it would call into question the credibility of all of their opinions as their opinions were consistent with the opinion of Dr. Engelman.

As to plaintiffs' first argument, the dispute centers upon the date from which the court should measure the ten year period under Rule 609. Plaintiffs contend that for purposes of Rule 609, the ten years should be measured from the date of his expert report, September 27, 1987, rather than the time of his testimony in July or August of 1989 [3] as defendants contend. Dr. Engelman's videotaped testimony was taken approximately three weeks prior to trial, on July 25, 1989. He was convicted on fraud on August 28, 1978, almost a full eleven years prior to trial. His report on the medical treatment rendered in this case was disseminated on September 29, 1987. Plaintiffs contend that the conviction of Dr. Engelman, who testified as a non-party expert witness, should have been admissible under Fed.R.Evid. 609.

■ In support of their argument, plaintiffs point to the legislative history of the evidentiary rule, and contend that the rule was specifically designed to protect a defendant from being forced to choose between remaining silent or speaking on his own behalf and being impeached with his prior criminal record. 1974 U.S.Code Cong. & Admin.News 7051, 7061. Plaintiffs argue the primary concerns underlying Fed. R.Evid. 609 are very weak in this case as the witness with the prior conviction at issue was not a party and could not himself be prejudiced in any way.

The application of Rule 609, as plaintiffs implicitly concede, is not limited to defendants or parties in a particular law suit. The Rule itself does not use the term "defendant" or "party"; instead it uses the term "witness." [4] The fact that Dr. Engelman testified as a non-party expert witness does not eliminate the need for the court to analyze the admissibility of his 1978 misdemeanor conviction for filing false income tax returns under Fed.R.Evid. 609 as Rule 609 is not limited to parties or defendants. *See United States v. Bibbs*, 564 F.2d 1165, 1170 (5th Cir.1977); *Davis v. United States*, 409 F.2d 453, 456–457 (D.C.Cir. 1969).

■ The heart of the issue really lies in whether the court erred in finding that Dr. Engelman's conviction was more than ten years old, taking it out of the automatically admissible category of Fed.R.Evid 609. Plaintiffs argue the date from which the court should calculate the ten year period in Fed.R.Evid. 609 was the time at which Dr. Engelman disseminated his expert report in this case, not the time of his testimony in July or August of 1989. The court disagrees. In *Trindle v. Sonat Marine Inc.*, 697 F.Supp. 879, 881–82 (E.D.Pa. 1988), the court very closely analyzed the issue, determining that the time of the testimony is the relevant time for purposes of the ten year limitation of Rule 609(b). The court is persuaded by the reasoning of *Trindle* and finds that the relevant time is the time of trial or the time at which the witness testified. *See also* J. Weinstein, *Weinstein's Evidence*, ¶ 609, at 112 (1987) (the most appropriate time to conclude the period is "the time of testimony ... since the jury must determine credibility at that

---

**3.** As noted, Dr. Engelman's videotaped deposition testimony was taken for trial in July of 1989. Trial commenced on August 14, 1989, and the tape was played for jury a few days thereafter. The differences between these dates are not relevant for purposes of this motion.

**4.** In fact, the 1990 amendments to Rule 609(a)(1) clarify the rule by distinguishing between "witness[es] other than an accused" and "an accused." Clearly, the rule applies to either group, including non-party witnesses.

moment.") As a result, the court finds that it did not commit error at trial when it found that Dr. Engelman's misdemeanor conviction was more than ten years old.

■ Plaintiffs also contend that even if the court was correct in determining that Dr. Engelman's conviction was more than ten years old, that the court improperly balanced the probative value of that conviction with the prejudicial effect. The court found that the eleven year old misdemeanor conviction had little probative value, and that

> there [wa]s a strong likelihood of prejudice to all defendants in this case if the court admit[ted] the conviction. Such conviction would likely taint the jury's view of the entire defense because each defendant's expert [wa]s expected to provide a similar explanation of the defendants' conduct.

August 18, 1989 Transcript at 147–48. To consider the prejudice to *all* defendants, rather than just considering "the prejudicial effect against the party offering that witness," 1974 U.S.Code Cong. & Admin. News at 7061, plaintiffs claim was erroneous.

The court does not believe Fed.R.Evid. 609 should be read so narrowly. The rule itself states that a conviction over ten years old "is *not* admissible ... unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances *substantially* outweighs its prejudicial effect." Fed.R.Evid. 609(b) (emphasis added). Here, the court found that there would be a prejudicial effect to all of the defendants, not just Dr. Kirschenfeld for whom Dr. Engelman's testimony was offered, and the court found that the probative value of an eleven year old misdemeanor conviction for filing false tax returns was slight. The court believes that consideration of the prejudice to all defendants is a proper consideration under Fed. R.Evid. 609, and is necessary to ensure a fair trial for all parties. Discussing Fed. Rule Evid. 609, Senate Report No. 93–1277 for the Committee of the Judiciary indicated, "It is intended that convictions over

ten years old with be admitted very rarely and only in exceptional circumstances." Given the facts and circumstances of this case, the court finds that the exclusion of the misdemeanor conviction of Dr. Engelman was not an abuse of discretion.

**B.** *Medical Malpractice Charge*

■ Plaintiffs object to the medical malpractice charge given by the court to the jury. They point specifically to the language of the charge where the court instructed the jury, "The physician cannot be held liable if in the exercise of judgment he has, nevertheless, made a mistake," and argue that that language misled the jury as it appeared to allow physicians carte blanche to make mistakes in treating patients. They claim that the sentence noted should have itself modified the term judgment so that the jurors would have understood that any judgment exercised by a physician must comply with accepted medical practices, and that the charge as given was likely to cause confusion and misunderstanding among jurors.

The court finds plaintiffs' objection to the charge meritless. The sentence selected by plaintiffs must be read in the context of the charge on a physician's exercise of judgment. That portion of the charge reads:

> Likewise, where, according to accepted medical practice, the manner in which diagnosis and/or treatment is conducted is a matter subject to the judgment of the physician, the physician must be allowed to exercise that judgment. *The physician cannot be held liable if in the exercise of judgment he has, nevertheless, made a mistake.* Where judgment must be exercised, the law does not require of the doctor infallible judgment. Thus, a physician cannot be found negligent so long as he employs such judgment as is allowed by accepted medical practice. If, in fact, in the exercise of his judgment, a doctor selects one of two or more courses of action, each of which in the circumstances has substantial support as proper practice by the medical profession, the doctor cannot be found

negligent if the course chosen produces a poor result.

On the other hand, a doctor who departs from standard medical practice where no judgment is permitted cannot excuse himself from the consequences by saying that it was an exercise of his judgment. Or, to state it in a different way, if the exercise of a doctor's judgment causes him to do that which standard medical practice forbids, the doctor would be negligent. Similarly, a doctor whose judgment causes him to omit doing something which is required by standard medical practice is also negligent.

Jury Charge at 19–20 (emphasis added to provision to which plaintiffs object). The instruction as given properly charged the jury under the law of New Jersey. *Schueler v. Strelinger*, 43 N.J. 330, 344–45, 204 A.2d 577 (1964). Furthermore, the charge was specifically modeled after Section 5.28 of the Model Jury Charges, Civil (3d ed.) as espoused by the New Jersey Supreme Court Committee on Model Jury Charges, Civil. The court holds that the charge was not confusing or likely to mislead the jury, and that it committed no error by submitting the above charge to the jury.

■ Plaintiffs also object to the submission, of the written charge to the jury. They note that there is nothing in Federal Rules of Civil Procedure which specifically prohibits the trial court from submitting a written charge to the jury, but claim that in this case that it was extremely prejudicial to do so due to the allegedly erroneous charge concerning the use of judgment by a physician discussed *supra*. As noted above, the court finds no error with the charge as given. In addition, in the court's experience, it is *helpful* to the jury to submit a written charge to it, particularly in a case such as this where the issues are complex. *See, Copeland v. United States*, 152 F.2d 769, 770 (D.C.Cir.1945). Many, if not the majority, of federal courts provide written instructions to the jury. The court fails to find that there was any error in the submission of the written charge to the jury.

## C. *Aggregate Damages*

■ Finally, plaintiffs complain about the court's treatment of damages in this case. The court refused to permit plaintiffs' expert, Dr. Steven Zelikoff, to testify to the aggregate amount of damages sustained by plaintiffs. Plaintiffs urge the court to find that this was prejudicial error as it created the impression to the jury that plaintiffs' expert was ineffectual and cast dispersions on other parts of plaintiffs' case. Plaintiffs contend that the court erred by not following *Salas v. Wang*, 846 F.2d 897, 906 (3d Cir.1988) in which the Court of Appeals for the Third Circuit found that the district court did not abuse its discretion under the Federal Rules of Evidence by permitting an expert witness to testify as to the aggregate amount of damages suffered by plaintiffs.

Plaintiffs misconstrue *Salas* and the ruling at trial by the court. In *Salas*, the Court of Appeals found that the Federal Rules of Evidence governed the admissibility of such evidence instead of the state rule of *Tenore v. NU Car Carriers, Inc.*, 67 N.J. 466, 482–84, 341 A.2d 613 (1975) which precluded the admission of an aggregate amount of damages. *Salas* did *not* require admission of the aggregate amount of damages. At trial, the court found that an aggregate damage figure would be admissible, August 18, 1989 Transcript at 31; however, during plaintiffs' expert testimony, it became clear that his damage figures were calculated as of March 27, 1986, and were no longer accurate at the time of trial in August of 1989. *See id.* at 58. Defendants objected to plaintiffs' expert testifying to figures not contained in his report. *Id.*

The court found that requiring plaintiffs' expert to stick to those figures alone would be unjust, and urged counsel to concur on a solution. *Id.* at 60. After a luncheon recess during which counsel discussed a remedy to the inaccurate figures, plaintiffs' counsel proposed that the expert use an eight percent interest rate and a four percent inflation rate in his calculations. *Id.* at 62. Defense counsel was willing to stipulate to those figures, but did not want to

allow plaintiffs' expert to perform numerical calculation with those figures. *Id.* at 63–64. The court found that plaintiffs' expert could either testify to the aggregate 1986 figures contained in his report or that he could testify about the eight percent interest rate and four percent inflation rate with the court instructing the jury how to make any calculations. *Id.* at 65. The problem was the result of the fact that plaintiffs had not updated their expert report prior to trial. *Id.* at 65–66. Plaintiffs objected to the options with which the court provided them, and selected to have the expert testify concerning the eight percent interest rate and four percent inflation rate. *Id.* at 66. The parties then entered into a stipulation concerning those figures. Given the facts detailed above, the court does not find that its ruling that plaintiffs' expert could not testify to aggregate amounts that were not contained in his 1987 report to be prejudicial error requiring a new trial.

█ Plaintiffs also contend that the instructions given to the jury on damages were unnecessary and inapplicable, and, as a result, mandate a new trial. Defendants posit that if there was any error in the damage charge to the jury, which they contend there was not, that such error was harmless as the jury found that the defendants were not negligent. The court concurs with defendants. Even if the court committed error in the damage portion of the jury instructions (which it does not believe it did), any such error would be harmless as the jury found that defendants had not been negligent. *Taylor v. National Trailer Convoy, Inc.*, 433 F.2d 569 (10th Cir.1970).

## III. CONCLUSION

The court did not commit any prejudicial error of law in this case. The jury's verdict was not against the great weight of the evidence, nor does the court believe that there is any other equitable reason for it to overturn the verdict of the jury. For the above-detailed reasons, the court finds that a new trial is not warranted in this case.