David WHITESIDE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0511–CR–674.

Court of Appeals of Indiana.

Sept. 14, 2006.

Michael R. Fisher, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott Barnhart Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

David Whiteside appeals his conviction for class C felony auto theft.[1] We affirm.

### Issues

Whiteside raises two issues, which we restate as the following three:

I. Whether the trial court erred in permitting the State to impeach his witness with evidence of the witness's prior conviction;

II. Whether the trial court abused its discretion in admitting evidence that the arresting officer addressed Whiteside by his first name; and

III. Whether the trial court abused its discretion in admitting evidence that Whiteside had been incarcerated.

### Facts and Procedural History

On January 22, 2005, David Fernandez and his six-year-old son drove to an Indianapolis appliance store. Fernandez went into the store, leaving his son in his Toyota Sequoia SUV with the engine running. Wearing a ski mask, Whiteside approached the vehicle, tapped on a window, and told the child that his father wanted him in the store. The child went to the open door at the front of the store and saw his father inside. The child looked back at the car

---

1. Ind.Code § 35–43–4–2.5.

and saw Whiteside get in the car and drive away. The child told Fernandez that someone had stolen the car, and Fernandez came outside the store and saw that the car was gone. Fernandez went back into the store and told the clerk that his car had been stolen. The store clerk called 911 and gave Fernandez the phone to report the stolen vehicle. Approximately ten minutes later, police officers stopped a vehicle matching Fernandez's description two blocks from the appliance store. Whiteside was alone in the vehicle. Police officers drove Fernandez and his son to the location of the stop, and the child identified the mask Whiteside had worn.

On January 24, 2005, the State charged Whiteside with the following: Count I, class D felony auto theft, with a class C felony enhancement under Part II;[2] and Count II, class D felony theft. On April 1, 2005, the State charged Whiteside with being a habitual offender.

On August 24, 2005, a jury trial commenced. Outside the presence of the jury, Whiteside submitted, *inter alia*, two oral motions in limine. First, he asked the trial court to prohibit the arresting officer from testifying that, when he approached Fernandez's vehicle, he greeted Whiteside by his first name. The trial court denied Whiteside's request, ruling that the officer would be allowed to testify for the sole purpose of identification and would be prohibited from testifying how he knew Whiteside, and offered to provide a limiting instruction to the jury. Additionally, Whiteside requested that the trial court prohibit the State from presenting evidence that his witness, Anthony Parker, had been convicted of auto theft.[3] The trial court initially granted the motion so

that it could research the issue but ultimately denied Whiteside's motion and allowed evidence of Parker's prior auto conviction. The State informed the trial court that it intended to question Parker as to whether he had contact with Whiteside when both men were incarcerated at the same facility. Whiteside objected. The trial court ruled that the State would be allowed to question Parker regarding his contact with Whiteside because "it goes directly to the heart of whether Mr. Parker is truthfully testifying." Tr. at 158.

During the State's case in chief, the arresting officer testified that as he approached Fernandez's vehicle he said, "[H]ello, David." *Id.* at 166. The trial court immediately provided the jury with the following instruction: "You may only consider that last statement by the officer for the sole purpose of the issue of identification. You may not speculate as to why the witness may have recognized that person." *Id.*

Whiteside presented the testimony of Anthony Parker. During cross-examination, the State asked Parker whether he had been convicted of auto theft on September 28, 1993. *Id.* at 217. Parker confirmed that he had. *Id.* Immediately thereafter, the trial court admonished the jury: "Ladies and Gentlemen, evidence of a prior conviction of a witness may be used only to evaluate that witness's credibility." *Id.* at 217–18.

The State also questioned Parker regarding his contact with Whiteside during the time both men were incarcerated. Parker testified that he had been in contact with Whiteside while incarcerated. The State then attempted to impeach Parker's credibility by inquiring as to whether

---

2. Auto theft is a class C felony if the person has a prior auto theft conviction. I.C. § 35–43–4–2.5.

3. Parker testified that Fernandez had an agreement with Whiteside to exchange the use of his vehicle for cocaine.

he had previously denied any contact with Whiteside.

On August 25, 2005, the jury found Whiteside guilty of auto theft but not guilty of theft. Whiteside then waived his right to a jury trial as to Part II under Count I and the habitual offender enhancement. The trial court found Whiteside guilty as to Part II and found him to be a habitual offender.

On September 6, 2005, Whiteside filed a motion to correct error requesting that the trial court vacate its habitual offender finding, arguing that one of the convictions upon which the State relied was improper. On October 13, 2005, the trial court granted Whiteside's motion. The trial court then sentenced Whiteside to a term of seven years for the class C felony auto theft conviction. Whiteside appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### *Standard of Review*

 Our standard of review for the admissibility of evidence is well established. The admission or exclusion of evidence lies within the sound discretion of the trial court and is afforded great deference on appeal. *Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997). We will reverse the trial court's ruling on the admissibility of evidence only for an abuse of discretion. *State v. Lloyd*, 800 N.E.2d 196, 198 (Ind.Ct.App.2003). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in

favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Wilhelmus v. State*, 824 N.E.2d 405, 414 (Ind.Ct.App.2005). Errors in the admission or exclusion of evidence are considered harmless unless they affect the substantial rights of a party. *Camm v. State*, 812 N.E.2d 1127, 1137 (Ind.Ct.App. 2004), *trans. denied.* To determine whether an error in the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence on the jury. *Id.*

### *I. Prior Conviction*

Whiteside contends that the trial court erred in allowing the State to impeach Parker by eliciting evidence that he had been convicted of auto theft. Indiana Evidence Rule 609 governs impeachment by evidence of conviction of crime.[4] Evidence Rule 609(b) provides,

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or, if the conviction resulted in confinement of the witness then the date of the release of the witness from the confinement unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with

---

4. Indiana Evidence Rule 609(a) provides,

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is (1) murder, trea-

son, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement. The parties do not dispute that the auto theft conviction falls within Evidence Rule 609(a).

a fair opportunity to contest the use of such evidence.

Specifically, Whiteside argues that Parker's prior auto theft conviction lies outside the ten-year limitation provided by Indiana Evidence Rule 609(b), that the trial court failed to properly balance the probative value of the conviction against its prejudicial effect, and that the State failed to provide written notice of its intent to use evidence of the conviction. We address each argument in turn.

■ The threshold question is whether Parker's prior conviction falls outside the ten-year time period provided by Evidence Rule 609(b). Whiteside and the State agree that the ten-year time limit began to run on the date that Parker was released from confinement imposed for his auto theft conviction: March 1, 1995. However, they disagree as to the termination point of the ten-year time period. The State argues, and the trial court agreed, that the termination point of the ten-year time period is the date the current offense was committed, January 22, 2005, rendering evidence of the conviction admissible. Whiteside argues that the termination point of the ten-year time period is the date trial is commenced, which here occurred on August 24, 2005, or the date the witness testifies, here August 25, 2005, thus rendering evidence of the conviction inadmissible unless the requirements of Evidence Rule 609(b) are met.

Indiana courts have addressed several issues regarding Evidence Rule 609(b), including whether the trial court abused its discretion in balancing the probative value of a stale conviction against its prejudicial

effect. *See Scalissi v. State,* 759 N.E.2d 618 (Ind.2001); *Stephenson v. State,* 742 N.E.2d 463 (Ind.2001); *Schwestak v. State,* 674 N.E.2d 962 (Ind.1996); *Hall v. State,* 769 N.E.2d 250 (Ind.Ct.App.2002); *Dowdy v. State,* 672 N.E.2d 948 (Ind.Ct.App.1996), *trans. denied* (1997). We have also concluded that the notice requirement of Evidence Rule 609(b) is not satisfied by a habitual offender charge. *See Giles v. State,* 699 N.E.2d 294 (Ind.Ct.App.1998). We have determined that, where the defendant opens the door to inquiries about his criminal past, evidence of a prior conviction is admissible even though the State failed to provide notice pursuant to Evidence Rule 609(b). *See Wales v. State,* 768 N.E.2d 513, 520–21 (Ind.Ct.App.2002), *aff'd on reh'g,* 774 N.E.2d 116 (Ind.Ct.App. 2002), *trans. denied.* Finally, we have reviewed whether a juvenile adjudication met the Evidence Rule 609(b) requirements. *See Newman v. State,* 719 N.E.2d 832 (Ind.Ct.App.1999), *trans. denied* (2000). While the termination point of the ten-year period was not an issue in any of these cases, in two instances our courts simply assumed, without discussion, that the end point in calculating the time period was the date of trial. *See Stephenson,* 742 N.E.2d at 486; *Dowdy,* 672 N.E.2d at 952. The issue, however, was not before the *Stephenson* or *Dowdy* courts, and their comments are dicta. The issue is one of first impression in Indiana.

■ Initially, we note that the relevant language of Indiana Evidence Rule 609(b) closely parallels that of Federal Evidence Rule 609(b).[5] While we are not bound by interpretations of the Federal Rules of

---

**5.** Federal Evidence Rule 609(b) states in relevant part,

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the

confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Evidence, we may look to them for guidance. Similarly, where the rule governing impeachment of a witness by prior conviction in other states is substantially similar to our own, that state's application of its rule may be helpful in determining the proper application of our rule.

That said, we observe that there is disagreement among other jurisdictions as to the termination point of the ten-year period. *See* 4 J. WEINSTEIN, WEINSTEIN'S FEDERAL EVIDENCE § 609.06[2] (2d ed. 2003) ("There has also been some uncertainty about what event concludes the running of the 10–year period."). Three different termination points have been identified by various jurisdictions. Some jurisdictions identify the termination point as the date trial begins. *See United States v. Thompson*, 806 F.2d 1332, 1339 (7th Cir.1986); *United States v. Cathey*, 591 F.2d 268, 274 n. 13 (5th Cir.1979); *Sinegal v. State*, 789 S.W.2d 383, 388 (Tex.App.1990). Other jurisdictions identify the termination date as the date the witness testifies or the evidence is offered. *See Pepe v. Jayne*, 761 F.Supp. 338, 342–43 (D.N.J.1991), *aff'd*, 947 F.2d 936 (3d Cir.1991); *Trindle v. Sonat Marine, Inc.*, 697 F.Supp. 879, 881 (E.D.Pa.1988). The termination of the ten-year limit has also been identified as the date of the charged offense. *See United States v. Foley*, 683 F.2d 273, 277 (8th Cir.1982), *cert. denied; State v. Ihnot*, 575 N.W.2d 581, 585 (Minn.1998).

In support of its position that the most appropriate termination point is the date the offense occurred, the State relies on *Ihnot*, 575 N.W.2d 581. In *Ihnot*, the Minnesota Supreme Court held that the date of the charged offense is the appropriate event for determining whether a prior conviction falls within the ten-year period. *Id.* at 585.[6] The *Ihnot* court set forth three justifications in reaching this decision. First, the court observed that both the trial date and the date the witness testifies can be manipulated to permit the ten years to expire. *Id.* (citing 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6136 (1993)). Second, the *Ihnot* court averred that neither the trial date nor the date the witness testifies is supported by any policy justification. *Id.* Finally, the *Ihnot* court noted that inasmuch as prior convictions lose their probative value for impeachment purposes because more than ten years of good behavior has elapsed, then the period to measure is the period of good behavior. *Id.* (citing *Cathey*, 591 F.2d at 277 n. 2).

▪ We do not find the *Ihnot* court's reasoning persuasive. While it is true that the date of trial and the date the witness testifies may be manipulated, a relatively small proportion of prior convictions would be subject to such manipulation. Further, it is highly unlikely that such tactics would successfully prevent the opposing party from introducing evidence of a prior conviction that possessed significant probative value. As will be discussed in greater detail below, when determining whether to admit a conviction older than ten years, the trial court should consider the degree of remoteness in time of the conviction. Consequently, if a prior conviction falls outside the ten-year limit by an insignificant amount of time, the degree of remoteness will not weigh heavily

---

**6.** Minnesota Evidence Rule 609(b) provided,

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. *Ihnot*, 575 N.W.2d at 584.

against admitting evidence of the conviction. Furthermore, we note that even if the date that the offense was committed is identified as the termination point, problems in calculating the ten-year period will be not eliminated. In some situations the date of the offense may be difficult to determine. The *Ihnot* court acknowledged this problem, observing that "where the charged criminal acts are alleged to have occurred on unspecified dates within a longer period of time, there is a risk that the prosecution could be deliberately vague as to the date of offense, so as to preserve the opportunity to impeach the defendant with a prior conviction." 575 N.W.2d at 585–86.

█ We also disagree with the *Ihnot* court's position that there is no policy justification for choosing the date the witness testifies or the evidence is introduced. The purpose of Evidence Rule 609(b) is to guard against the prejudicial impact that the disclosure of a prior conviction has upon the jury. The moment that the jury learns that a witness was previously convicted is the first moment that the unfair prejudice, if any, has the potential to influence the jury. We therefore agree with the Eastern District of Pennsylvania that "[b]ecause it is the jury which must evaluate the witness' credibility, the most appropriate time to conclude the ten year period is the date the jury actually hears the witness testify that he had been convicted of a crime." *Trindle,* 697 F.Supp. at 882. Judge Weinstein agrees that the date the witness testifies is the appropriate termination point of the ten-year period, stating, "The time of testimony appears most appropriate, since the jury must determine credibility at that moment." 4 WEINSTEIN § 609.06[2] at 609–49.

Moreover, we note that the date the witness testifies or the evidence is introduced is the most logical termination point

given the plain language of Evidence Rule 609(b), which simply begins, "Evidence of a conviction under this rule *is not admissible[.]*" (Emphasis added.) *See* 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE 13 § 609.201, 169 (2d ed. 1995) ("The time limit under Rule 609(b) generally is straightforward: *if the time of impeachment* is less than ten years from the more recent of the conviction or the witness's release from confinement on the conviction, Rule 609(b) is inapplicable.") (emphasis added) (footnote omitted).

Lastly, with regard to the *Ihnot* court's third justification, that convictions lose their probative value because of ten years of good behavior, we observe that in *Ihnot,* the State of Minnesota sought to impeach the defendant with a prior conviction. We reject the reasoning that the good behavior of a person with a prior conviction ends on the date of the charged offense because such reasoning implies that the defendant is guilty of the charged offense before he or she has been so found. In addition, Indiana Evidence Rule 609(b) is not written so as to apply only where the State seeks to impeach the accused; it also applies where the defendant seeks to impeach the State's witness and where, as here, the State seeks to impeach the defendant's witness.

Of the three possible termination points, no choice is perfect. However, based on the plain language of the rule and its underlying policy considerations, we hold that the date the witness testifies or the evidence is introduced is the most appropriate termination point for determining whether a conviction falls within the ten-year limit provided by Evidence Rule 609(b). Accordingly, the trial court erred in finding that Parker's prior conviction fell inside the ten-year limit provided by Evidence Rule 609(b).

Nevertheless, a conviction older than ten years may be admitted if the trial court determines that the probative value supported by specific facts and circumstances substantially outweighs the prejudicial effect. Ind. Evidence Rule 609(b). Here, the trial court engaged in such a balancing test. We note our standard of review:

> Rule 609(b), unlike Rule 403, is a rule that presumes the exclusion of convictions more than ten years old. As such, the party seeking to admit such convictions must support the argument for probative value with specific facts and circumstances upon which the trial court may base a finding of admissibility. In addition, the trial court must balance the probative value against the prejudicial effect of the old convictions on the record. We review this ruling under Rule 609(b) for an abuse of discretion.

*Scalissi*, 759 N.E.2d at 624. There is a broad range of factors that a trial court may consider in determining whether the probative value of a prior conviction substantially outweighs its prejudicial effect. Such factors may include the nature of the prior crime, the length of the person's criminal record, the witness's age and circumstances, the likelihood that the person would not testify, the degree of remoteness of the prior crime, the witness's subsequent career, the centrality of the credibility issue, the need for the person's testimony, and (if the witness is the defendant) the crime's similarity to the crime charged. 13 MILLER § 609.202 at 171; *see also Scalissi*, 759 N.E.2d at 625 (providing a non-exhaustive list of factors appropriate to consider when the defendant is the witness to be impeached); *Dowdy*, 672 N.E.2d at 951–52.

Here, the trial court made the following findings:

> First, the Court will find that by my calculation this conviction falls within the ten year window. So for that purpose it's admissible. Assuming I am wrong on that and it falls outside the ten year window, then the Court has, as required by the law, undertaken the balancing test, and I believe that the probative value of this evidence outweighs any prejudicial effect on the defendant. If we were dealing with the defendant's own conviction maybe my feelings would be different. And as I stated before, if we were dealing with a conviction of another type of crime my ruling likely will be different. But I think given that it is auto theft, given that it goes to the credibility of the witness, and in my opinion does not in any way taint the credibility or, call upon the guilt or innocence of the defendant, then I think it is admissible.

Tr. at 179. The trial court's balancing is sufficiently specific to meet the requirements of Rule 609(b). In addition, we observe that given the nature of his testimony, Parker's credibility was a central issue at trial. We conclude that the trial court did not abuse its discretion in weighing the probative value of the prior conviction against its prejudicial impact and finding that it was admissible.

We now consider Whiteside's contention that evidence of Parker's prior conviction was inadmissible because the State failed to provide him with advance written notice as required by Evidence Rule 609(b). We observe that the State does not argue on appeal that it provided sufficient notice to Whiteside, and there is no evidence in the record that such notice was provided. Accordingly, given that the State failed to comply with the notice requirement of Evidence Rule 609(b), we conclude that the trial court abused its

discretion in admitting Parker's prior conviction.

 However, we will find errors in the admission of evidence harmless unless they affect the substantial rights of the party. *Camm*, 812 N.E.2d at 1137. Here, we initially observe that the evidence was not substantive evidence used to establish Whiteside's guilt but was evidence used to impeach Whiteside's witness. Further, any resulting prejudice was mitigated when, immediately after the evidence of the conviction was introduced, the trial court admonished the jury that "evidence of a prior conviction of a witness may be used only to evaluate that witness's credibility." Tr. at 217–18. This Court presumes that a timely and accurate admonition cures any error in the admission of evidence. *Banks v. State*, 761 N.E.2d 403, 405 (Ind.2002).

Nevertheless, Whiteside alleges that the evidence of the Parker's prior conviction was not harmless because the prosecutor in his closing argument invited the jury to base its decision on past behavior and not on the evidence presented at trial. Appellant's Br. at 8. We disagree with Whiteside's characterization of the prosecutor's comments. Our review of the record reveals that the prosecutor told the jury that the prior conviction could be considered to evaluate Parker's credibility and that the jury should "weigh the credibility of what he said. Weigh how he said it. We all talked about that, the demeanor, the con-

sistency with what he said." Tr. at 260. In sum, we find that the admission of Parker's prior conviction was harmless error.

## II. *Arresting Officer's Testimony*

 Whiteside asserts that the trial court erred in allowing the arresting officer to testify that he greeted Whiteside by his first name. In support, he relies on Indiana Evidence Rule 403, which provides in pertinent part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Specifically, Whiteside contends that the probative value of the arresting officer's testimony is substantially outweighed by the danger of unfair prejudice in that (1) the arresting officer's testimony had no probative value because although the State offered it to show identity, identity was not at issue; and (2) the testimony was prejudicial because it supports an inference that Whiteside had prior contact with law enforcement and therefore must have committed prior bad acts.[7]

Our review of the record establishes that Whiteside's identity was not at issue, and therefore the officer's testimony was essentially irrelevant.[8] However, we are not persuaded that the unfair prejudice, if any, resulting from the officer's testimony is as substantial as Whiteside contends. We do not think that the fact that the arresting officer knew Whiteside on a first-

---

7. Additionally, Whiteside claims that the inference that he committed prior wrongs violates Evidence Rule 404(b). Whiteside failed to raise this Evidence Rule 404(b) argument before the trial court, and therefore it is waived. *See C.T.S. v. State*, 781 N.E.2d 1193, 1204 (Ind.Ct.App.2003) (failure to raise issue before trial court results in waiver of that issue), *trans. denied*.

8. *See* Ind. Evidence Rule 401 (" 'Relevant evidence' means evidence having any tenden-

cy to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Ind. Evidence Rule 402 ("All relevant evidence is admissible, except as otherwise provided by the United States or Indiana constitutions, by statute not in conflict with these rules, by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible.").

name basis leads unerringly to the conclusion that the two were acquainted solely as a result of Whiteside's prior misconduct. However, even if that possibility occurred to a juror, the trial court immediately admonished the jury not to speculate as to why the officer knew Whiteside and to consider the officer's statement "for the sole purpose of the issue of identification." Tr. at 166.[9] As previously noted, a timely and accurate admonition is presumed to cure any error in the admission of evidence. *Banks,* 761 N.E.2d at 405. Accordingly, we conclude that the admission of the officer's testimony is harmless error.

### III. Evidence of Whiteside's Incarceration

 Whiteside asserts that the trial court abused its discretion in allowing the State to reveal that Whiteside had been incarcerated when it questioned Parker regarding his contact with Whiteside during their incarceration. Specifically, Whiteside contends that the evidence that he was incarcerated impaired the presumption that he was innocent, resulting in unfair prejudice, and was thus inadmissible pursuant to Evidence Rule 403. The State argues that the questions were probative as to Parker's truthfulness and credibility as a witness because they established that Whiteside and Parker had the opportunity to fabricate Parker's testimony.

While we think that the State could have successfully impeached Parker's testimony without referring to the location of Whiteside and Parker's contact, thereby eliminating any possibility of unfair prejudice, any error in the admission of the evidence that Whiteside was incarcerated is harmless given the evidence of Whiteside's guilt. "Where the jury's verdict is supported by independent evidence of guilt such that upon review we are satisfied that there was no substantial likelihood that the evidence in question played a part in appellant's conviction, any error in its admission is harmless." *Roche v. State,* 596 N.E.2d 896, 901 (Ind.1992). Here, the appliance store clerk testified that Fernandez came into the store that day, that Fernandez's son entered the store sometime later, that Fernandez left the store and reentered indicating that his car had been stolen, and that they immediately called 911. Fernandez's child testified that he and his father went to the appliance store, and he sat in the car while his father went into the store. The child also testified that a man with a ski mask approached the car, tapped on the glass, and told him that his father wanted him to go inside the appliance store. The child saw the man drive the car away. The child then told his father that the car had been stolen. Later, the child identified the mask worn by the man. Fernandez testified that he and his son drove to the appliance store, that he left his son in the car, that his son came inside and told him the car had been stolen, and that he told the store clerk his car had been stolen. He further testified that he had not given anyone permission to drive his vehicle. Based upon this independent evidence, we cannot say that there was a substantial likelihood that the reference to Whiteside's incarceration for an undefined offense played a part in Whiteside's conviction.

Affirmed.

KIRSCH, C.J., and BAILEY, J., concur.

---

9. While Whiteside contends that the trial court's admonishment only served to emphasize the unfair prejudice, the record reveals that he did not express this concern when the trial court offered to provide a limiting instruction to the jury. Tr. at 29.