**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J. T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL WHITE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1406-CR-243 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Daniel Pflum, Judge
Cause No. 49G20-1305-FC-29580

**January 16, 2015**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Michael White (White), appeals his conviction for Count I, possession of cocaine, a Class C felony, Ind. Code § 35-48-4-6; Count II, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11; and his adjudication as an habitual substance offender, I.C. § 35-34-1-5.

We affirm.

## ISSUE

White raises one issue on appeal, which we restate as: Whether the trial court properly admitted the evidence discovered following White's stop and arrest.

## FACTS AND PROCEDURAL HISTORY

On May 5, 2013, Indianapolis Metropolitan Police Officer Jana Goode (Officer Goode) was driving home in her personal vehicle on Keystone Avenue in Indianapolis, Indiana, after her shift had ended. At the intersection of Keystone Avenue and 25th Street, Officer Goode observed a tan car exit a fast-food restaurant parking lot directly in front of her car. The tan car drove forward into traffic, hitting a red car in the left lane. Without stopping or exiting his car, the driver of the tan car, later identified as White, backed up, and then pulled forward in between Officer Goode's car and the red car, driving away north-bound on Keystone Avenue. Officer Goode reported the incident, turned her car around, and started following White. When White turned north onto Ralston Avenue, Officer Goode lost sight of him.

2

Officers Adam Mengerink (Officer Mengerink) and Dustin Keedy (Officer Keedy) responded to Officer Goode's radio report of the accident and stopped White's car at the intersection of Fall Creek and 30th Street. Officer Goode arrived at the stop and informed the Officers what she had observed. All three officers noticed front-end damage to White's car, as well as red paint markings on the front bumper.

During the stop, both Officer Mengerink and Officer Keedy smelled a strong odor of raw marijuana on White's person when he exited the car, as well as an odor of burnt marijuana inside White's vehicle. The officers arrested White for leaving the scene of an accident. Following White's arrest, Officer Keedy searched White but found no marijuana on his person. The officers searched the car and did not locate any marijuana inside the vehicle. Meanwhile, Officer Goode returned to the location of the accident, but the red car was no longer there.

After being placed in custody, White was transported to the Arrestee Processing Center (APC). At the APC, Marion County Sheriff's Deputy Brent Doughty (Deputy Doughty) performed a pat-down search of White. Because of the strong smell of marijuana emanating from White, Deputy Doughty also subjected White to a strip search. The strip search was done in private, with two deputies present. During this search, Deputy Doughty discovered two baggies near White's buttocks inside his underpants. The baggies contained raw marijuana, as well as 3.1992 grams of cocaine.

On May 7, 2013, the State filed an Information, charging White with Count I, possession of cocaine, a Class C felony, I.C. § 35-48-4-6; Count II, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11; Count III, failure to stop after an

3

accident with an unattended vehicle, a Class B misdemeanor, I.C. §§ 9-26-1-3, -8(b); and Count IV, trafficking with an inmate, a Class A misdemeanor, I.C. § 35-44.1-3-5. On April 2, 2014, the State amended the Information, adding Count V, alleging White to be an habitual substance offender, I.C. § 35-34-1-5.

On August 26, 2013, White moved to suppress the evidence discovered following his arrest. On November 6, 2013, White amended his motion to suppress, asserting that he was arrested under the wrong Indiana Code section and without probable cause. On May 16, 2014, after a combined suppression hearing and bench trial, the trial court denied White's motion to suppress, found that probable cause to arrest him existed, and that the subsequent search was legal. The trial court declared White guilty of Count I, possession of cocaine, a Class C felony, and Count II, possession of marijuana, a Class A misdemeanor. After White stipulated to the charge, the trial court adjudicated him an habitual substance offender. That same day, the trial court sentenced White to six years executed on Count I, enhanced by six years for the habitual offender adjudication, and a one year concurrent sentence on Count II, for an aggregate sentence of twelve years executed.

White now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

White contends that the trial court abused its discretion when it admitted the evidence resulting from White's arrest and strip search. Our standard of review for the admissibility of evidence is well settled. The admission or exclusion of evidence lies within the trial court's sound discretion and is afforded great deference on appeal.

4

*Whiteside v. State*, 853 N.E.2d 1021, 1025 (Ind. Ct. App. 2006). We will reverse a trial court's ruling on the admissibility of evidence only for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

In essence, White makes two assertions: first, he disputes the legality of the arrest pursuant to I.C. § 35-33-1-1(a)(3), and second, White argues that he was subjected to a strip search at the APC in violation of his Fourth Amendment rights and his rights pursuant to the Indiana Constitution.

### A. *Probable Cause*

Pursuant to I.C. § 35-33-1-1(a)(3), a law enforcement officer may arrest a person when the officer has probable cause to believe the person failed to stop after a property damage accident under I.C. § 9-26-1-2.

Probable cause to arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question. *Clark v. State*, 808 N.E.2d 1183, 1192 (Ind. 2004) (citing *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. *Ortiz v. State*, 716 N.E.2d 345, 348 (Ind. 1999). It is grounded in notions of common sense, not mathematical precisions. *Ogle v. State*, 698 N.E.2d 1146, 1148 (Ind. 1998). As such, the probable cause standard

5

is a "practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983)). Because it deals with probabilities and depends on the totality of the circumstances, the probable cause standard is incapable of precise definition or quantification into percentages. *Pringle*, 540 U.S. at 371. However, the substance of the definition of probable cause is a reasonable ground for belief of guilt and this belief of guilt must be particularized with respect of the person to be searched or seized. *Id*. (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)).

Contesting the existence of probable cause, White claims that the amount of evidence available to stop and arrest him for failure to stop after a property damage accident only rose to the less demanding standard of reasonable suspicion. "Reasonable suspicion . . . is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur." *Billingsly v. State*, 980 N.E.2d 402, 408 (Ind. Ct. App. 2012). We disagree.

Officer Goode observed White strike a red car while exiting from a parking lot into Keystone Avenue, and fleeing the scene. She reported the incident and followed White. Even though other officers stopped White, Officer Goode caught up with him and informed the other officers of her observations. All three officers noticed the front-end damage on White's car, including the "red paint from the other car [which] had

6

transferred over to the bumper" of White's car. (Transcript p. 12). Although there was "old" damage to White's front bumper, the "red paint transfer" looked "fresh." (Tr. p. 38). Officer Goode testified that the area with the red paint was "consistent with the area of [White's] vehicle that [she] previously saw strike the red vehicle." (Tr. p. 21). Based on the evidence, we conclude that the officers had a reasonable belief that White had failed to stop after a property damage accident and therefore his arrest was supported by probable cause.[1] *See Pringle*, 540 U.S. at 371.

## B. *Strip Search*

Next, White contends that the strip search at APC violated his Fourth Amendment rights. The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." As a general rule, the Fourth Amendment prohibits warrantless searches. *Meister v. State*, 933 N.E.2d 875, 878 (Ind. 2010). When a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement; a search incident to arrest is one such exception. *Id.*

Thus, a police officer may conduct a warrantless search of a person if the search is incident to a lawful arrest. *Edwards v. State*, 759 N.E.2d 626, 629 (Ind. 2001). In such situations, the search and the arrest must be "substantially contemporaneous," and the

---

[1] Because we find that the officers had probable cause to stop White, we will not address White's alternative argument that in case no probable cause to arrest White for leaving the scene of a property damage accident existed, the "smell of marijuana on his person" did not justify the arrest. (Appellant's Br. p. 11).

search must be confined to the immediate vicinity of the arrest. *Townsend v. State*, 460 N.E.2d 139, 141 (Ind. 1984). The requirement of a contemporaneous search has been interpreted liberally, however, and Indiana courts have validated searches that do not occur until the arrestee arrives at a law enforcement facility, as long as the items searched are "found on the person of an arrestee" or are "immediately associated with this person." *Edwards*, 759 N.E.2d at 629. Therefore, here, because White's arrest was supported by probable cause, the contested strip search can be evaluated as a search incident to a lawful arrest.

Nevertheless, both Indiana case law and federal precedents place limits on searches incident to an arrest. The United States Supreme Court has held that once a lawful arrest has been made, authorities may conduct a "full search" of the arrestee for weapons or concealed evidence. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 428 (1973). No additional probable cause for the search is required, and the search incident to arrest may "involve a relatively extensive exploration of the person." *Id.* at 227 (quoting *Terry v. Ohio*, 392 U.S. 1, 25, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). However, such a search would be unreasonable, and therefore a violation of the Fourth Amendment standard, if it were "extreme or patently abusive." *Id.* at 236. In *Edwards,* 759 N.E.2d at 629, our supreme court rejected the "general proposition that a routine, warrantless strip search incident to a lawful misdemeanor arrest is reasonable." Rather, carefully delineating the parameters, the *Edwards* court concluded that "[t]o the extent a search is conducted on the basis of jail security, the indignity and personal invasion necessarily accompanying a strip search is simply not reasonable without the

reasonable suspicion that weapons or contraband may be introduced into the jail." *Id.* at 630. The circumstances surrounding the arrest, rather than the offense itself, may give rise to a reasonable suspicion, and if so the search is justified. *Id.*

During the stop both officers noticed a strong odor of raw marijuana on White's person when he exited the car, as well as an odor of burnt marijuana inside White's vehicle. Despite patting down White and searching his car, the officers did not locate any marijuana. Upon his arrest, White was transported to the APC. At the APC, Deputy Doughty conducted a strip search of White because of "the strong odor of what appeared to be maybe marijuana." (Tr. p. 55). He reiterated that the odor raised a concern of contraband trafficking in the jail, possibly resulting in "violence within the jail." (Tr. p. 56). Deputy Doughty conducted the search in private and located two baggies in White's underwear. We conclude that although the underlying arrest constituted a misdemeanor, the strip search incident to White's arrest was justified because of the officers' reasonable suspicion that weapons or contraband would be introduced into the jail due to the lingering odor of marijuana which engulfed White even after having been transported to the APC. *See Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014), *trans. denied* (noting that the odor of raw marijuana indicates that it has not been smoked and therefore still may be in the defendant's possession). The strip search did not violate White's Fourth Amendment rights.[2]

## CONCLUSION

---

[2] Because we affirm the trial court based on the Fourth Amendment, we will not address White's Indiana Constitution argument.

Based on the foregoing, we conclude that the trial court properly admitted evidence following White's arrest and search.

Affirmed.

VAIDIK, C.J. and BAKER, J. concur